## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO


DAVID S. PETERSON,

        Plaintiff,


v.                                                CIV  NO. 02 - 1487 MCA/ACT


IRMA LUCERO, CARL TOERS BIJNS,
THERESA MARQUEZ, JOHN SHANKS,
JERRY TAFOYA and TIM LEMASTER,

        Defendants.


### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION


        THIS MATTER COMES before the Court on an Order of Reference from the District

Court Judge to the Magistrate Judge to recommend ultimate disposition of this case. (Doc. No.

22).  Having reviewed the outstanding motions, including the Motion of Defendants Irma Lucero,

Carl Toers-Bijns, Theresa Marquez, Jerry Tafoya and Tim LeMaster to Dismiss or in the

Alternative for Summary Judgment (Doc. No. 39, renewed by Doc. No. 58) and the Motion by

Defendant John Shanks to Dismiss or in the Alternative for Summary Judgment (Doc. No. 46,

renewed by Doc. No. 58), the Magistrate Judge recommends that Summary Judgment be granted

in favor of the Defendants because there are no material issues of fact in dispute and the moving

parties, the Defendants, are entitled to judgment as a matter of law.

## HISTORY OF THIS LITIGATION

The Complaint in this case was filed November 25, 2002.  (Doc. No. 1).  The majority of the Complaint was dismissed for failure to state a claim upon which relief can be granted by a Memorandum Opinion and Order entered April 9, 2003. (Doc. No. 9).  Plaintiff's claim of due process relating to his classification and transfer was dismissed.  His claim of denial of access to the courts because Defendants failed to provide him with legal assistance was dismissed.  His claims of the denial of free process, violation of the state open meetings act and the destruction of his property were also dismissed.  In a subsequent Order addressing the Plaintiff's objections, the Court also dismissed the Plaintiff's claims arising from the denial of newspapers and claims concerning visitation rights. (Doc. No. 15).

Only two claims remain in the Complaint - a retaliation claim in violation of the First Amendment and a cruel and unusual punishment claim in violation of the Eighth Amendment. Defendants filed their motions for summary judgment on the remaining claims of the Complaint. The Court, finding that additional information would be helpful in addressing the motions, ordered an extensive *Martinez* report to be filed by the Defendants.  Plaintiff continued to file discovery requests during the time the *Martinez* report was being prepared.  Upon a motion by the Defendants, the Court issued a Protective Order until the *Martinez* report was issued and ordered the Plaintiff to propound reasonable discovery requests to the Defendants once he had reviewed the *Martinez* report.  The *Martinez* report was filed, the discovery disputes were resolved and Plaintiff has filed his response to the *Martinez* report. (Doc. Nos. 63 and 80).

## SUMMARY JUDGMENT

Summary judgment is an integral part of the Federal Rules of Civil Procedure which are intended to "'secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (quoting *Russillo v. Scarborough*, 935 F. 2d 1167, 1170 (10th Cir. 1991).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F. 2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, Rule 56 (e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'." *Celotex*, 477 U.S. at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## PLAINTIFF'S CLAIMS OF RETALIATION

To state a valid claim for retaliation under 42 U.S.C. §1983 in a prison civil rights case, the Plaintiff/prisoner must allege: 1) a specific constitutional right; 2) the defendants' intent to retaliate against the prisoner for his exercise of that right; 3) a retaliatory adverse act; and 4) that

the adverse act was caused by the defendants.  *Jones v. Greninger*, 188 F. 3d 322, 324-325 (5th Cir. 1999).  Plaintiff's Complaint asserts that he had filed a lawsuit against certain prison officials and caused a subpoena to be served on Defendant Warden Irma Lucero on January 9, 2001.  As a result of this action, Plaintiff asserts that Defendants caused his cell to be searched and confiscated legal papers belonging to others.  He claims that he was unaware of any purported prison regulation that prohibited one inmate from possessing the legal papers of another inmate.  A misconduct was served upon Plaintiff on January 10, 2001 and a disciplinary hearing was held on January 12, 2001.

The Plaintiff's Response to the *Martinez* report establishes that Defendant Lucero did not cause Plaintiff's cell to be searched as a result of her being served by a subpoena.  Exhibit "g" to Plaintiff's Response, a Memo from Defendant Warden Irma Lucero to Plaintiff David Peterson dated January 31, 2001 in response to Plaintiff's appeal of his January 12, 2001 disciplinary hearing states, "facility logs show the search of your housing unit J began at approximately 7:10 a.m., and the misconduct report indicates your cell was searched at 8:50 a.m.  The Sheriff's Office's documents reveal that I was served with a summons or subpoena at approximately 1:11 p.m., several hours after the shakedown had been completed.  Moreover, I did not order the shakedown and was unaware of any contraband uncovered until late afternoon."

The *Martinez* report contains the prison regulations in effect on January 9, 2001 regarding prohibited conduct, CD090101.1A and 1B.  The regulations were revised on November 15, 2000 and clearly stated that the provisions of the policy applied to offenses committed after the revision date of the policy.  Category B offenses included "B(15) Possession of Unauthorized Legal Documents: Possession of legal documents of another inmate outside the immediate presence of

the inmate to whom the documents belong."  Plaintiff claims that he was unaware of the regulation but Exhibit "h" of his Response clearly shows that he received a Memo addressed to him from Defendant Warden Irma Lucero dated December 1, 2000, that reviewed his concerns regarding the revised policy about possessing the legal papers of others.  Defendant Lucero wrote, "The Category B(15) offense of Possession of Unauthorized Legal Documents appears to me to specify, in a clear and straightforward fashion, the conduct which may subject an inmate to a misconduct report."

The *Martinez* report contains thirteen Inmate Misconduct Reports, all dated January 9, 2001, that concern legal documents belonging to other inmates, not present, found after a shakedown of Petitioner's cell.  The *Martinez* report also contains the Disciplinary records for the hearing held on January 12, 2001 on these thirteen Misconduct Reports.  In every instance, Plaintiff admitted that he had legal documents that belonged to other inmates.  His response in every instance was the same - he didn't think he had done anything wrong, the policy was inappropriate as possession of legal documents does not pose a threat to the security of the institution and he was being retaliated against because he had a subpoena served on Warden Lucero.

It is clear that there are no disputed issues of material fact on this retaliation claim.  The policy was clear, Plaintiff had notice of the policy, he violated the policy and he was given a disciplinary hearing.  The Sheriff's office served the subpoena on Defendant Lucero several hours after the housing unit was searched.  Moreover, she had not even ordered the search. The Court finds that Plaintiff has failed to establish there are material issues of fact in dispute regarding this aspect of his retaliation claim.  The Court recommends that summary judgment be entered in

favor of the Defendants on this issue.

Plaintiff also claims that he has been subject to retaliation because he has filed a number of grievances that assert his rights as a prisoner.  In accordance with the Court's request, the *Martinez* report included copies of the grievances Plaintiff filed from January 1, 2001 to March 31, 2004.  Despite the fact that Plaintiff filed approximately one hundred twenty seven (127) grievances, the Plaintiff has not been able to point to any retaliatory adverse action that resulted as a consequence of his grievances.  The Court also finds that there are no material issues of fact in dispute on this issue and recommends  that summary judgment be entered in favor of the Defendants on this issue of retaliation.

## PLAINTIFF'S CLAIMS OF CRUEL AND UNUSUAL PUNISHMENT

Plaintiff claims that his civil rights were violated by the imposition of cruel and unusual punishment in the form of food deprivation, sleep deprivation, being deprived of adequate clothing and bedding for the conditions of his cell, and being deprived of drinking water in his cell when the water was cut off because of water or sewage flooding at PNM North.

## PLAINTIFF'S CLAIMS OF FOOD DEPRIVATION

The *Martinez* report included Plaintiff's medical records from January 12, 2001 to December 31, 2002.  On January 19, 2001, Plaintiff's weight was recorded as 169 pounds.  On the January 24, it was recorded as 164.7 pounds and on February 13, 2001, his weight was recorded as 159.9 pounds.  This was the thirty day period, from January 12 to approximately February 11, 2001 during which Plaintiff was not allowed to purchase food from the canteen as

6

part of the punishment imposed at the January 12, 2001 disciplinary hearing.[1]

While the medical records do document some weight loss in this thirty day period, the records do not establish that Plaintiff suffered a notable weight loss or that the medical personnel were concerned about the weight loss.  On May 29, 2001 Plaintiff's weight was back up to 164 pounds, down to 161 pounds two days later, up to 164.8 pounds on June 6, 2001 and down to 163.2 pounds on June 27, 2001.  His weight continued to fluctuate between 162 and 166 pounds until October 3, 2001 when he complained to the prison medical providers that he was hungry a lot and the diet was not adequate.  At that time he weighed 164 pounds.  By January 25, 2002 his weight was up to 168 pounds.  By April 2, 2002 he was up to 173 pounds and was at 175 pounds on May 10, 2002.  On August 2, 2002 his weight was 176 pounds and by December 4, 2002 he weighed 183 pounds.  The medical records do not reflect any concerns about weight gain or loss expect for the note on October 3, 2001 when Plaintiff complained that the institution's diet was not adequate for him.

Plaintiff is 72 inches or six feet tall.  According to the web site www.consumer.gov, Plaintiff's body mass index (BMI) ranged from 22.9 when he weighed 169 pounds to 21.7 when he weighed 159.8.   The Surgeon General of the United States has established that a healthy body mass index for a man six feet tall should range between 19 and 24. [2]  The *Martinez* report demonstrates that his weight fluctuated often, sometimes as much as three pounds in two days and varied according to where he was incarcerated, presumably because of differences in scales or

---

[1]The punishment imposed as a result of the January 12, 2001 disciplinary hearing only prohibited Plaintiff from purchasing or possessing food items from the canteen.  It did not affect his access to the regularly served meals.

[2]www.surgeongeneral.gov/topics/obesity.

clothing.   In 2002 he actually gained 15 pounds.  While Plaintiff argues that his weight loss in early 2001 constitutes cruel and unusual punishment, the Court does not find support for this argument in the *Martinez* report.  *See, Thompson v. Gibson*, 289 F. 3d 1218 (10th Cir. 2002). From these medical records, the Plaintiff is unable to present any evidence that would support his claim that he was subject to cruel and unusual punishment because he received an inadequate diet. His BMI was always within the normal range, the weight loss recorded on the medical charts was not "notable", and the medical records did not establish any diminished health.  *See, Hazen v. Pasley*, 768 F.2d 226, n.2 (8th Cir. 1985).   The Court finds that Plaintiff has presented no evidence to support this claim and recommends that summary judgment be entered in favor of the Defendants on this issue.

As part of both his retaliation and his cruel and unusual claims, Plaintiff also complained that he was forced to buy food from the canteen to supplement the meals served to him at the correctional facilities where he was housed.  Plaintiff cited to one instance where he bought food for personal consumption that was found and confiscated during a search of his cell.  Plaintiff was served with a misconduct because of the food.  Plaintiff claims the staff of the prison ate his food after confiscating it.  The Court ordered the documents concerning this incident to be included in the *Martinez* report.

A review of the misconduct report does not establish any facts that would give rise to a claim of cruel and unusual punishment or a claim of retaliation.  The search of Plaintiff's cell took place on February 6, 2001, after the disciplinary hearing held January 12, 2001.  At the January disciplinary hearing, Plaintiff was given various loss of privileges for thirty days because he had violated CD090101.1B(15) including loss of personal property and loss of canteen privileges.  On

February 6, 2001, various food items were found in Plaintiff's cell.  Plaintiff stated that he had purchased the food prior to January 12, 2001.  The items were confiscated and a disciplinary hearing was held on February 13, 2001.  The Hearing Officer found Plaintiff guilty of a minor level infraction and recommended the property be destroyed, which appears to have occurred from the records.

It is clear that Plaintiff had lost his personal property privileges for thirty days beginning January 12, 2001 and that the food found in his cell was in violation of this loss of privilege. There is no evidence to support the allegation that the food was taken in retaliation for Plaintiff's exercise of his constitutional rights including his right to file legal claims and have Defendant Lucero served with a subpoena.

Nor is there any evidence that Plaintiff needed access to additional food bought from the canteen to supplement his diet because the meals provided by the various institutions were he has been incarcerated were inadequate to maintain Plaintiff's weight and health. The *Martinez* report contains the menus used for food service at the institutions in which Plaintiff has been housed. The menus are the "New Mexico Heart Health Menus" and are approved by a registered dietician. Portions are in line with USDA recommended serving sizes and the menus include a variety of fruits and vegetables. The meals are generally designed to provide 3,000 calories a day. There is absolutely no evidence that the meals are not nutritionally adequate.  *See, e.g.*, *Ramos v. Lamm*, 639 F. 2d 559, n.15 (10th Cir. 1980).

The Court finds that the *Martinez* report establishes that there are no material issues of fact in dispute on these claims.  Plaintiff did not suffer cruel and unusual punishment because Defendants deprived him of food, either from the canteen or as part of the regular food service.

The Court recommends  that summary judgment be entered in favor of the Defendants on these food deprivation issues.

### PLAINTIFF'S CLAIM OF SLEEP DEPRIVATION

Plaintiff also claims that while he was incarcerated at PNM North, he suffered cruel and unusual punishment when Defendants imposed a policy of sleep deprivation.  As requested by the Court, the *Martinez* report included the PNM policies in effect at the time Plaintiff was incarcerated there.  The report also included New Mexico Correctional Department Policy CD-0143005.  Reveille was at 5:30 AM at which time the officers physically awakened  inmates and insured movement or verbal communication.  Beds had to be made by 7:00 a.m. Stand up counts were at 11:00 a.m., 4:00 p.m., 9:00 p.m., and 10:30 p.m.  Counts were also done at 12:00 a.m. and 2:30 a.m., but did not require the inmate to stand.  However, the guard had to observe the inmate and assure himself that the inmate was alive and well.  In addition, there were emergency counts during which all inmates must stand up to be counted regardless of the hour. .

To establish a cruel and unusual punishment claim in violation of the Eighth Amendment, the Plaintiff must meet the objective standard that the conduct complained of violates "contemporary standards of decency", *Hudson v. McMillian*, 503 U.S. 1 (1992), or constitutes "inhumane conditions".  *Farmer v. Brennan*, 511 U.S. 825 (1994).  The Court finds that being awakened at 5:30 a.m., being required to be out of bed by 7:00 a.m., and being allowed to retire for the night after 10:30 p.m. does not constitute inhumane conditions.  Plaintiff has not presented any evidence that Defendants practiced sleep deprivation as a form of punishment.  The Court finds that the *Martinez* report establishes that there are no material issues of fact in dispute on the

issue of sleep deprivation. The Court recommends  that summary judgment be entered in favor of the Defendants on this issue.

### PLAINTIFF'S CLAIM OF DENIAL OF ADEQUATE BEDDING AND CLOTHING

Plaintiff also claims that he was subject to cruel and unusual punishment when he was denied adequate clothing and bedding during the first week or two of his incarceration at PNM North.  The *Martinez* report includes the record of the clothing and bedding that prison officials issued Plaintiff upon his arrival at PNM North on September 21, 2001.  The log shows that Plaintiff was given one complete set of clothes including seven pairs of underwear and socks, two sheets, a pillow and pillowcase, two blankets and two towels.  The following day he was issued two more set of clothes and an additional towel. The log establishes that  Plaintiff received the standard issue of clothing and bedding upon his arrival.  Plaintiff argues that this log is incorrect but offers no evidence to refute it.  The Court finds that there are no material issues of fact in dispute concerning adequate bedding and clothing and recommends that summary judgment be entered in favor of the Defendants on this issue.

### PLAINTIFF'S CLAIM OF DENIAL OF WATER

Lastly, Plaintiff asserts that he was subjected to cruel and unusual punishment when he was denied drinking water because the cells at PNM North had flooded and the water was turned off.  He alleges that the water was turned off numerous times for long periods of time while he was incarcerated at PNM North.  The *Martinez* report does not support this claim.  The Court requested all reports that would document water flooding, sewage flooding and water turn offs at

PNM North while Plaintiff was incarcerated there.  Defendants responded that no such reports existed for the time during which Plaintiff was at PNM North, September 21, 2001 to August 8, 2002.  James Lopez, the Unit Manager for PNM North during this time frame, submitted an affidavit included in the *Martinez* report. He stated that emergency repairs as a result of flooding are not documented by work orders and that based on his memory, the water has not normally been turned off for more than two and a half hours during repairs.  According to the affidavit of the Unit Manager, if the water had been turned off for longer than two and a half hours, the inmates would have been moved to a unit with working plumbing.

Plaintiff responded that the affidavit was false, that many major incident reports were generated during this time period about flooding and water turn offs, and that the logs from master control and unit control would establish his claims.  However, Plaintiff failed to submit a single piece of evidence to support his allegations.  As noted above, the Court requested reports which would substantiate the allegations that the water was turned off for long periods of time at PM North.  The Defendants replied that such reports did not exist and instead submitted the affidavit of James Lopez as part of the *Martinez* report.

The Court also finds it noteworthy that Plaintiff failed to file a single grievance concerning these alleged incidents when the water was turned off for long periods of time.[3]  Plaintiff filed

---

[3] The Prison Litigation Reform Act, 42 U.S.C. §1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner ... until such administrative remedies as are available are exhausted."  The Court, having examined the *Martinez* report and the pleadings, finds that the Plaintiff has failed to exhaust his administrative remedies with respect to his claim of water turn offs.  The Court could recommend a dismissal of the complaint without prejudice because Plaintiff failed to exhaust his administrative remedies with respect to every one of his Eighth Amendment claims.  *Ross v. County of Bernalillo*, 365 F.3d 1181 (10th Cir. 2004).  However, since the *Martinez* report addresses the merits of this issue, the Court has proceeded to make findings and recommend that summary judgment be entered in favor of the Defendants on this issue.

over a hundred grievances in the time period covered by the *Martinez* report.  His grievances range from complaints about the coffee at breakfast to squeaky fans keeping him awake at night. Yet, there is not a single grievance concerning the lack of water to his cell while at PNM North. Plaintiff has been unable to present any evidence to dispute the affidavit of the Unit Manager. The Court finds there are no material issues of fact in dispute on this issue and recommends  that summary judgment be entered in favor of the Defendants on  Plaintiff's claim that he was subject to cruel and unusual punishment because the water was turned off to his cell.

<u>CONCLUSION</u>

Plaintiff asserted two claims, that he suffered retaliation because he caused a subpoena to be served upon Defendant Warden Irma Lucero and that he suffered cruel and unusual punishment because of the conditions of his confinement.  The extensive *Martinez* report produced by the Defendants established that these claims are not supported by the evidence. Plaintiff responded to the *Martinez* report with his own evidence but the evidence failed to establish that there are material issues of fact in dispute. Defendants have moved for summary judgment on the claims of retaliation and cruel and unusual punishment.  The Court, finding that no material issues of fact are in dispute and that Defendants are entitled to summary judgment as a matter of law, recommends that SUMMARY JUDGMENT BE ENTERED IN FAVOR OF THE DEFENDANTS on the remaining claims of the Plaintiff.

<u>NOTIFICATION</u>

THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102, pursuant to 28 U.S.C. §636 (b)(1).  A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE